## WILKERSON *v.* STATE.

### Opinion delivered November 25, 1912.

1. EVIDENCE—PAROL EVIDENCE TO CONTRADICT RECORD.—Where the record of a justice of the peace, offered in evidence, did not show that a certain witness was convicted of petit larceny, it was not error to refuse to permit the justice of the peace to testify that he intended the judgment entry as a conviction of petit larceny. (Page 369.)

2. APPEAL AND ERROR—NECESSITY OF OBJECTON TO EVIDENCE.—Appellant can not on appeal complain of the admission of improper evidence where he failed to object to same or to move the court to exclude such evidence from the jury. (Page 370.)

3. SAME—HARMLESS ERROR.—One convicted of murder in the second degree can not complain because the jury found him guilty of a lower degree than the evidence tended to prove him guilty of. (Page 370.)

Appeal from Lafayette Circuit Court; *Jacob M. Carter* Judge; affirmed.

#### STATEMENT BY THE COURT.

The indictment charged appellant with the crime of murder in the first degree, alleging that he "did unlawfully, wilfully, feloniously and of his malice aforethought, and of premeditation and deliberation, kill and murder one Amanda Turner by then and there striking, beating and cutting her with a certain axe," etc. The indictment was sufficient.

There was proof tending to show that on the morning of the killing the appellant sold Amanda Turner a pocketbook, and when she placed her money in the pocketbook the appellant handled some of it. He had in his hands a $5 gold piece, and said that he used to have one, and if he ever got another one he would keep it. Amanda Turner also had some silver and greenbacks. She took the money out of her stocking, and put it in the pocketbook, and put the pocketbook down in her bosom.

Without going into details, the testimony tended to show that the appellant had the opportunity to commit the crime.

He was seen in the vicinity of Amanda Turner's house the morning she was killed, and was also seen in the vicinity shortly after the killing. Amanda Turner was murdered by some one cutting her in the head with an axe. The axe was found with blood on it, under the house, and the cuts on her head and face indicated that the killing was done with an axe. When she was found, one stocking was pulled down. It was shown that she carried her pocketbook in her stocking.

The testimony tended to show that the motive for the crime was robbery. It was shown that the appellant, on the day of the killing, and some time afterwards, in company with a companion, went to the house where Amanda Turner was killed, and he was heard to remark that the officers had a writ for him, and he was going to leave. He left the community, and was arrested, sometime after the killing, in Texas.

Tom Lucas, who was in jail with appellant, testified that appellant said he was "sitting on the bed making a cigarette and told her (Amanda Turner) to give him the pocket book as he wanted to put $5 in it; said she finally laid down on the bed, and Bill brought him the axe, and he hit the woman and then threw the axe under the house, and kicked it and cut his shoe. After that he pulled my shoe one night and woke me and asked me if I was going to appear against him, and I told him I didn't know, and he fell over and cried and prayed."

It was shown that appellant's shoe had holes cut in it. He said one of the holes was cut because the lining hurt his foot, the other hole he had not noticed before his testimony was given.

A witness by the name of Mark Hanna Washington testified as follows: "The defendant did not sleep in the cell with me, and Tom Lucas. I saw him and Lucas talking one night and also one day. They were whispering. One night defendant pulled my foot and then pulled Tom's, and Tom went down to the cell, and they talked. I could hear what they said, and he told Tom he did not want him to go and testify against him as to what he told him about the woman, and Tom said he wouldn't."

In the examination of this witness the following occurred:

"Q. Have you ever been arrested and tried and convicted for stealing? A. No, sir.

"Q. Were you ever arrested and carried before Squire W. L. Nance, justice of the peace, charged with having stolen Mr. Austin's watch, and fined five dollars? A. Yes, sir.

"Q. What did you say you hadn't been arrested for? A. I had not, just for stealing. Q. Didn't you say you was fined five dollars? A. Yes sir. Q. What else did they do to you? A. They never done nothing to me. Q. Was there a jail sentence against you? A. No, sir. Q. Well, wasn't you put in jail? A. They just put me in jail, and mama paid my fine, five dollars."

At this juncture appellant's counsel offered to introduce page 453 of Justice W. L. Nance's record. The court stated, "That judgment doesn't show that he was convicted of petit larceny."

Appellant's counsel then asked permission to introduce Justice Nance and let him amend his record to show that the judgment was intended by him to apply as petit larceny. The court stated as follows: "I don't think he could amend it any by showing what it means. The court judicially knows that the lowest fine for petit larceny is ten dollars, and some time in jail. There is no judgment on that record showing that he was convicted of the crime of petit larceny." The court therefore refused to allow the testimony to be introduced.

The appellant was convicted of murder in the second degree, and sentenced to ten years in the penitentiary.

No brief filed for appellant.

*Hal L. Norwood*, Attorney General, and *William H. Rector*, Assistant, for appellee.

WOOD, J., (after stating the facts). The instructions of the court applicable to the facts in evidence were correct, and we deem it unnecessary to set them out and comment upon them as they only involve familiar principles of law that have been often announced by this court.

There was no error in the ruling of the court in refusing to permit appellant to show by the justice of the peace that he intended by the page of his record which appellant offered to introduce to enter a judgment against the witness, Mark Hanna Washington, for petit larceny. The record shows that the lower court examined the offered page, and found

that it did not show that the witness Washington was convicted of petit larceny. This being true, it was not error for the court to refuse to allow the appellant to vary or contradict this record by the testimony of the justice to the effect that he intended the judgment entry as a conviction for petit larceny. If the justice made a mistake in his judgment entry, it should have been corrected and amended, upon proper notice, at a hearing for that purpose, and, after being so amended, could then have been introduced in evidence.

Moreover, the appellant, after excepting to the court's action in refusing to allow the docket to be introduced, permitted the witness Washington to testify without further objection and without moving the court to exclude his evidence from the jury. Appellant therefore can not complain of the testimony of the witness Washington.

The testimony shows a most horrible murder, and appellant, if guilty at all, was guilty of murder in the first degree. The testimony was amply sufficient to sustain a verdict for that degree, and he can not complain because the jury found him guilty of a lower offense.

Affirmed.